UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ANDREW MACLACHLAN,

               Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

               Defendants.

_____/

Case No. 1:23-cv-806

Honorable Jane M. Beckering

**OPINION**

This is a civil rights action pursuant to 42 U.S.C. § 1983 that has been filed by attorney Angelle M. Rothis on behalf of state prisoner Andrew MacLachlan ("Plaintiff"). Counsel paid the full filing fee on Plaintiff's behalf.

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). However, the Court's preliminary review of the complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated parties into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. *See* Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against the Michigan Department of Corrections (MDOC), Boike, Burt, and Hoover, under the PLRA, the Court is required to dismiss any prisoner

action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Although Plaintiff is represented by counsel, the Court is still "required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners." *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled in other part by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). At this stage of the proceedings, the Court accepts Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants MDOC, Boike, Burt, and Hoover for failure to state a claim.

## Discussion

### I.      Procedural Background and Current Allegations

Plaintiff is presently incarcerated with the MDOC at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events of which Plaintiff complains occurred there, as well as at the Muskegon Correctional Facility (MCF), Muskegon, Muskegon County, Michigan. This is not the first complaint Plaintiff has filed regarding events that occurred on July 30, 2020. The Court, therefore, provides relevant procedural background below.

#### A.      Procedural Background

In 2021, Plaintiff filed a *pro se* complaint against the MDOC, as well as numerous MDOC employees at both ECF and MCF. Compl., *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. June 7, 2021), (ECF No. 1). Plaintiff subsequently filed an amended complaint. Am. Compl., *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Nov. 24, 2021), (ECF No. 10). In the amended complaint, Plaintiff alleged that the MCF Emergency Response Team (ERT) used excessive force

2

against him on July 30, 2020. *Id.*, (ECF No. 10, PageID.291–94). Plaintiff was then transferred to ECF. The remainder of his complaint concerned conduct at ECF. Primarily, Plaintiff alleged that ECF staff denied him medical treatment for the injuries he received during the use of excessive force and for pre-existing health conditions, including respiratory issues.

In an opinion and order entered on January 7, 2022, the Court screened Plaintiff's complaint pursuant to the PLRA. Op. & Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Jan. 1, 2022), (ECF Nos. 11 & 12). First, the Court concluded that Plaintiff had misjoined the ECF Defendants—Defendants Burgess, Goodspeed, Johnson, Bielas, Monroe, and Briske—and dismissed Plaintiff's claims against them without prejudice to his right to raise those claims in a new complaint. *See MacLachlan v. Burt*, No. 1:21-cv-461, 2022 WL 71768, at \*3–6 (W.D. Mich. Jan. 7, 2022). The Court next found that Plaintiff had failed to set forth plausible supervisory claims against Defendants Washington, Burt, and Steward premised upon his claims that they "supervised MCF personnel and that they denied his grievances." *Id.* at \*7. Additionally, the Court concluded that Plaintiff had set forth plausible Eighth Amendment excessive force claims against Defendants Kludy and Unknown Parties, and dismissed his Eighth Amendment claims against Defendants Hill, West, Brown, Miller, Hayes, and Betts. *Id.* at \*8. Finally, the Court dismissed Plaintiff's Fourteenth Amendment due process claims premised upon the deprivation of his property. *Id.* at \*9.

Following entry of the opinion and order, the Court stayed proceedings and referred the matter to the early mediation program. Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Jan. 7, 2022), (ECF No. 13). The case did not settle and was removed from mediation. *See* Order, *MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. May 11, 2022), (ECF No. 19). Defendant Kludy filed a motion for summary judgment on December 29, 2022. Mot. for Summ. J.,

*MacLachlan v. Burt*, No. 1:21-cv-461 (W.D. Mich. Dec. 29, 2022), (ECF No. 23). Attorney Rothis subsequently filed an appearance on behalf of Plaintiff. On August 31, 2023, Magistrate Judge Kent issued a Report and Recommendation (R&R) in which he recommended that the motion for summary judgment be granted. *MacLachlan v. Burt*, No. 1:21-cv-461, 2023 WL 6131016 (W.D. Mich. Aug. 31, 2023). On September 19, 2023, Judge Maloney entered an order adopting the R&R and terminating the action. *MacLachlan v. Burt*, No. 1:21-cv-461, 2023 WL 6123266 (W.D. Mich. Sept. 19, 2023).

### B.    Factual Allegations

In the instant complaint, Plaintiff sues the MDOC itself. He also sues the following MCF personnel: Warden Shirley Burt, Nurse Boike, and Dr. Barbara Hoover. Plaintiff also names the following ECF personnel as Defendants: Health Care Manager/Medical Coordinator Nikki Monroe, Dr. Robert Crompton, Registered Nurse Addie Briske, Warden Les Parish, Nurse Jack Bellanger, and Registered Nurse Sarah Luce. Plaintiff also names Unknown Parties #1 and #2, both of whom are named as "unknown medical worker[s] for MDOC." (ECF No. 1, PageID.7.)

Plaintiff alleges that on July 29, 2020, inmates at MCF "were getting frustrated because they believed new COVID positive patients were being transferred into their facility[,] which was COVID free." (*Id.*) The next morning, the MCF administration made prisoners carry bunk beds into Plaintiff's housing unit, "indicating that new prisoners were being brought to the unit who were not COVID tested." (*Id.*, PageID.8.) "The prisoners gathered and demanded answers but none were forthcoming so disorganization began and chaos ensued." (*Id.*) Staff then sprayed tear gas into the crowd of inmates. (*Id.*)

Plaintiff returned to his cell at around 3:00 p.m. and left the cell door open. (*Id.*) He heard a noise, looked out, and saw the ERT entering the unit, so Plaintiff shut the cell door. (*Id.*, PageID.9.) The ERT charged Plaintiff's cell "and told him he was charged with inciting a riot and

he was being transferred out of the facility." (*Id.*) The ERT yelled at Plaintiff "to get on the ground and put his hands behind his head and put his knees on the ground and face away." (*Id.*) Plaintiff did not resist. (*Id.*) The ERT, however, "slammed the Plaintiff's face to the floor[,] pushing his face violently to the floor." (*Id.*) Plaintiff could not break his fall, and the left side of his face hit the tile. (*Id.*) Plaintiff "heard a crack, and was in immediate pain." (*Id.*) The ERT grabbed Plaintiff by the back of his neck, choking him, and one of the team members put a knee in Plaintiff's back. (*Id.*) He was then hit with a riot shield in the shoulder and face and was also punched in the face. (*Id.*) The ERT "bent [Plaintiff] over parallel with the floor holding his hands behind him, and violently extracted him from his cell and forced him out into the transport van, without his personal belongings." (*Id.*, PageID.10.) Plaintiff alleges that on the way out, they stopped by the healthcare department. (*Id.*) Plaintiff states that he "was bleeding and could not breathe and was in pain and asked for necessary medical care and treatment." (*Id.*) Plaintiff contends that Defendants Boike and Hoover "refused him necessary medical care with deliberate indifference to Plaintiff's Constitutional Rights." (*Id.*)

Plaintiff was transferred to ECF that same day, "where he presented noticeably bloody, face was bruised, nose was broken, in pain, had trouble breathing, was wheezing, and his clothing was bloody." (*Id.*) Plaintiff asked for immediate medical treatment, but was denied by Defendants Crompton, Briske, Parish, and Bellanger. (*Id.*) Defendants Briske, Belanger, and Crompton also refused to give Plaintiff clean clothes and bedding. (*Id.*)

Plaintiff further alleges that he was transferred to ECF without his inhaler. (*Id.*, PageID.11.) He also claims that he was denied his 3-a-day breathing treatments at ECF, despite the fact that he had received these at MCF. (*Id.*) According to Plaintiff, Defendants Briske and Crompton denied Plaintiff's medical detail "like inhalers, antibiotics, pills, nebulizer, treatment for approximately

14 days including personal asthma medication and breathing treatments for approximately 14 days." (*Id.*, PageID.11–12.) Plaintiff states that he is allergic to aspirin, Ibuprofen, and NSAIDS, and has suffered episodes of anaphylaxis while incarcerated. (*Id.*, PageID.12.)

According to Plaintiff, he asked Defendant Crompton for treatment for a broken nose and asthma, as well as a referral to a specialist for his nose. (*Id.*) Defendant Crompton denied such care for about 3 months. (*Id.*) Plaintiff repeatedly asked Defendants Briske and Bellanger for medical care, such as pain medications, breathing treatments, and a visit to a specialist for his nose and chronic asthma; those requests were denied for 3 ½ months. (*Id.*) Plaintiff continued to experience symptoms and complained to Defendant Monroe, but she denied care. (*Id.*, PageID.13.) Plaintiff alleges further that Defendant Briske "degraded him and humiliated him while attending to his asthma." (*Id.*)

On September 23, 2020, Defendants Crompton, Briske, and Monroe sent Plaintiff to Munson Hospital in Traverse City, Michigan, for a CT scan. (*Id.*) That scan revealed "a mild nasal septal deviation to the left, severe chronic sinusitis, right sphenoid sinus with moderate mucosal thickening with some pneumatization, diffuse enlargement related to edema of the nasal turbinate[,] and osteomata units occluded bilaterally." (*Id.*) On October 13, 2020, Plaintiff was sent to see otolaryngologist Dr. Harry Borovik. (*Id.*) Dr. Borovik examined Plaintiff and diagnosed him with chronic pansinusitis, exacerbated respiratory disease, chronic rhinosinusitis sampler triad, and chronic nasal obstruction. (*Id.*, PageID.14.) Dr. Borovik recommended that Plaintiff "undergo immediate surgery." (*Id.*) On October 22, 2022, Dr. Borovik performed several surgical procedures on Plaintiff. (*Id.*) Plaintiff alleges that from July 30, 2020, until he received surgery on October 22, 2022, he suffered painful symptoms, including wheezing, shortness of breath, tissue in the nostrils, trouble breathing and sleeping, nasal infections, and discomfort. (*Id.*)

6

Plaintiff underwent an endoscopic pansinusitis debridement on November 3, 2020. (*Id.*) He had another procedure on November 24, 2020, which was believed to be to treat an infection. (*Id.*)

After continuing to experience symptoms, Plaintiff was sent to otolaryngologist Dr. Craig Hoekzema in January 2022. (*Id.*) Dr. Hoekzema tried non-revision treatment, but Plaintiff's symptoms continued. (*Id.*, PageID.15.) Thus, Dr. Hoekzema recommended that Plaintiff receive a revision surgery. (*Id.*) Plaintiff alleges, however, that the MDOC refused to allow the procedure. (*Id.*)

The MDOC is also denying Plaintiff allergy shots. (*Id.*) Plaintiff has a severe allergy to dogs, and the symptoms he experiences exacerbate his asthma. (*Id.*) Plaintiff has repeatedly requested transfers from ECF because of his allergies, and those requests have been denied by the ECF Defendants, namely Defendants Briske, Luce, Crompton, and Bellanger. (*Id.*)

Plaintiff alleges further that he suffers skin disorders, such as tissue infection, possible MRSA, and chronic sinusitis. (*Id.*) Defendant Crompton, however, did not provide care for such conditions. (*Id.*) Plaintiff alleges that from 2020 through the present, he has made continuous complaints about ongoing nasal problems to all Defendants at ECF, but that they have denied necessary medical treatment. (*Id.*, PageID.16.)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) Eighth Amendment violations against all Defendants for failing to provide adequate medical treatment; and (2) Fourteenth Amendment substantive due process claims against all Defendants premised upon the same. (*Id.*, PageID.19–24.) Plaintiff seeks compensatory and punitive damages, as well as attorneys' fees and costs. (*Id.*)

## II.     Misjoinder

Plaintiff brings this action against the MDOC, as well as 11 individual Defendants, asserting claims for denial of medical care at both MCF and ECF. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A.     Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

8

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to

> ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first event described within Plaintiff's

complaint is the use of force that occurred at MCF on July 30, 2020. Plaintiff contends that following that use of force, Defendants Boike, Hoover, and Burt denied him medical care prior to his transfer to ECF. (ECF No. 1, PageID.8, 10.) The manner in which Plaintiff presents his factual allegations supports identifying these individuals as the appropriate starting point for the joinder analysis. By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff's claims regarding what happened at MCF also implicate Defendant MDOC. Plaintiff then alleges that he was transferred to ECF, where he was continuously denied adequate medical care by Defendants Monroe, Crompton, Briske, Parish, Bellanger, and Luce. Plaintiff makes no factual allegations against Defendants Unknown Parties #1 and #2.

Liberally construed, the Court finds that Plaintiff's claims against Defendant MDOC are transactionally related to Plaintiff's initial claims against Defendants Boike, Hoover, and Burt. However, no matter how liberally the Court construes the complaint, Plaintiff has not stated at least "one claim against each [remaining Defendant] that is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778. Although all claims described within Plaintiff's complaint stem from the July 30, 2020, use of force, that relationship simply is not enough to conclude those claims *arise* out of the same transaction or occurrence. Plaintiff's claims regarding what occurred at MCF are limited to one day—July 30, 2020. Plaintiff's claims against the ECF Defendants, however, concern ongoing denials of adequate medical treatment from July 30, 2020, through the present. Moreover, Plaintiff fails to allege that Defendants Unknown Parties #1 and 2 were involved in the events set forth in

his complaint.[1] There is no transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor is there a question of law or fact, *see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Accordingly, the Court concludes that Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2 are misjoined.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now,

---

[1] It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Because Plaintiff fails to even mention Defendants Unknown Parties #1 and #2 in the body of his complaint, his allegations against them fall far short of the minimal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."

'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . . .'") (*quoting Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The statute of limitations, however, is subject to tolling. The Sixth Circuit has recognized that, in prisoner civil rights actions, the statute of limitations is tolled for the period during which a plaintiff's available state administrative remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). As the Sixth Circuit stated in *Brown*:

> The Prison Litigation Reform Act amended 42 U.S.C. § 1997e to provide: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1999). . . . This language unambiguously requires exhaustion as a mandatory threshold requirement in prison litigation. Prisoners are therefore prevented from bringing suit in federal court for the period of time required to exhaust "such administrative remedies as are available." For this reason, the statute of limitations which applied to Brown's civil rights action was tolled for the period during which his available state remedies were being exhausted.

*Id.* at 596 (citing *Harris v. Hegmann*, 198 F.3d, 157–59 (5th Cir. 1999) (per curiam); *Cooper v. Nielson*, 194 F.3d 1316, 1999 WL 719514 (9th Cir. 1999)). The Sixth Circuit noted that because it could not determine when the period of exhaustion expired, the appropriate remedy was to remand the case to the District Court to "consider and decide the period during which the statute of limitations was tolled and for such other proceedings as may be necessary." *Id*. at 597. Furthermore, "Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Here, Plaintiff alleges that the ECF Defendants engaged in conduct that began on July 30, 2020, and that has continued until the present day. Thus, Plaintiff appears to suggest that the ECF Defendants have engaged in a continuous course of action by denying him adequate medical treatment for his various conditions. Given Plaintiff's allegations, the complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against the ECF

Defendants, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if Plaintiff's claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2 from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same). If Plaintiff wishes to proceed with his claims against Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2, he may do so by filing new civil actions on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and either paying the required filing fee or applying in the manner required by law to proceed *in forma pauperis*.

As noted above, the Court's misjoinder analysis was set forth in its January 7, 2022, opinion and order in Plaintiff's prior lawsuit, and the Court explicitly concluded that Plaintiff had misjoined his claims against the ECF Defendants. *See MacLachlan*, 2022 WL 71768, at *5. The Court dismissed those claims without prejudice to Plaintiff's right to assert them in a new lawsuit. *Id.* at *6. The Court warned Plaintiff that he "must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined." *Id.* at *6 n.4. Given that prior conclusion, the proper course of action would have been to raise Plaintiff's claims against the ECF Defendants with no reference to the MCF Defendants, or to appeal the prior misjoinder decision to the Sixth Circuit. Instead, counsel has left

the Court with no choice but to once again conclude that Plaintiff's claims against the ECF Defendants are misjoined and should be dismissed without prejudice.

### III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

The Court's dismissal of Plaintiff's claims against Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2 as misjoined leaves his claims against Defendants MDOC, Boike, Hoover, and Burt. As discussed above, Plaintiff contends that they violated his Eighth and Fourteenth Amendment rights by failing to provide medical care immediately after the use of force at MCF on July 30, 2020, before Plaintiff was transferred to ECF that same day.

## A.   Defendant MDOC

Plaintiff's claims against Defendant MDOC are properly dismissed because Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See*

*Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.

### B.    Fourteenth Amendment Claims

Plaintiff also indicates that he is asserting violations of his Fourteenth Amendment rights premised upon "excessive force and deliberate indifference to medical needs causing wrongful death." (ECF No. 1, PageID.23.) Nowhere in the complaint, however, does Plaintiff indicate that he is asserting excessive force claims[2] or that a wrongful death occurred. Furthermore, Plaintiff references being a "pretrial detainee" during the relevant time, which is untrue. (*Id.*) Because the Eighth Amendment governs claims brought by convicted prisoners—like Plaintiff—for deliberate indifference to medical needs, Plaintiff's Fourteenth Amendment claims are subject to dismissal. *See Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citations omitted).

### C.    Eighth Amendment Claims

Plaintiff asserts violations of his Eighth Amendment rights premised upon a failure to provide adequate medical care. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

---

[2] It appears that the discussion regarding the ERT's use of force against Plaintiff was provided as background for his Eighth Amendment medical claims. The Court does not construe Plaintiff's complaint to assert any separate excessive force claims in this action, especially in light of the fact that such claims were raised and fully addressed in Plaintiff's prior action.

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff

must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v.*

*Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.    Defendant Burt

Plaintiff only mentions Defendant Burt in the following paragraph of his complaint: "Due to the tear gas and with Plaintiff having upper respiratory issues he tried to see medical for a breathing treatment and was refused with deliberate indifference to Plaintiff's Constitutional

Rights as stated herein, by defendants Hoover, Boike and Burt." (ECF No. 1, PageID.8 (capitalization omitted))

As an initial matter, to the extent that Plaintiff has named Burt as a Defendant because of her position as Warden, he fails to state a claim for relief. Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any facts showing that Defendant Burt encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Additionally, although Plaintiff alleges in a conclusory manner that Defendant Burt, as well as Defendants Boike and Hoover, acted with deliberate indifference when Plaintiff "tried to see medical for a breathing treatment and was refused" (ECF No. 1, PageID.8), Plaintiff fails to allege any *facts* to suggest that Defendant Burt had any personal involvement in the matter.[3] Furthermore, administrative or custody officials, such as Defendant Burt, who have no training or authority to supervise healthcare officials, typically cannot be held liable for the healthcare officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that a custody officer was entitled to rely on the medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) (noting that "if a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials). Defendant Burt cannot be considered deliberately indifferent by deferring to any treatment decisions made by the healthcare department. Plaintiff's conclusory allegations are simply insufficient to demonstrate that Defendant Burt was personally involved in the events described in Plaintiff's complaint. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendant Burt.

---

[3] Plaintiff's claims against Defendants Boike and Hoover are addressed below. *See infra* Section III.C.2.

### 2.    Defendants Boike and Hoover

With respect to his Eighth Amendment deliberate indifference to medical needs claims against Defendants Boike and Hoover, Plaintiff claims that he suffered from upper respiratory issues because of the use of tear gas during the use of force. (ECF No. 1, PageID.9.) Plaintiff was also bleeding after the incident. (*Id.*, PageID.10.)

Breathing complications, especially those exacerbated by the use of tear gas, can certainly constitute serious medical needs. Likewise, bleeding can constitute a serious medical need in certain circumstances. Plaintiff alleges only that "[o]n his way out of the compound they had stopped near health care and Plaintiff was bleeding and could not breathe and was in pain and asked for necessary medical care and treatment." (*Id.*, PageID.10.) Plaintiff contends that Defendants Boike and Hoover "refused him necessary medical care with deliberate indifference to Plaintiff's Constitutional Rights." (*Id.*) Although Plaintiff alleges in a conclusory manner that Defendants Boike and Hoover "refused him necessary medical care," Plaintiff fails to allege sufficient *facts* to support this conclusory assertion. Specifically, Plaintiff fails to allege what information, if any, Defendants Boike and Hoover had about Plaintiff's condition, and he fails to allege any facts about the nature of the "necessary medical care." (*Id.*) For example, although Plaintiff alleges that he was "bleeding and could not breathe and was in pain" when he was taken "near health care" on the way to the transport vehicle, based on the facts alleged by Plaintiff, it is unclear whether Plaintiff or any of the accompanying officers advised Defendants Boike and Hoover of these medical concerns. (*Id.*) Likewise, based on the facts alleged by Plaintiff, he has failed to allege sufficient facts to plausibly suggest that Defendants Boike and Hoover personally knew that Plaintiff was experiencing breathing problems and they did nothing to alleviate his symptoms. While bleeding would certainly be obvious to a layperson, Plaintiff provides no detail about the amount of bleeding he experienced from the use of force. In short, Plaintiff appears to

ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Plaintiff's allegations with respect to Defendants Boike and Hoover are simply conclusory and are not supported by *factual* allegations. Such conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's Eighth Amendment claims against Defendants Boike and Hoover.

## Conclusion

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants Monroe, Crompton, Briske, Parish, Bellanger, Luce, and Unknown Parties #1 and #2 are misjoined. The Court, therefore, will drop them as parties and dismiss Plaintiff's claims against them without prejudice. Moreover, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants MDOC, Boike, Hoover, and Burt will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __October 6, 2023__                    __/s/ Jane M. Beckering_____
                                                                Jane M. Beckering
                                                                United States District Judge